UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
NEW JERSEY CAMDEN VICINAGE

| | |
|---|---|
| **JOSHUA ROY MOSES,** <br><br> **Plaintiff,** <br><br> v. <br><br> **DR. RAVI SOOD, DR. LOUIS G. FARES, DR. B. CHOWDHURY, NICOLETTA TURNER-FOSTER, DAVID ORTIZ, UNITED STATES OF AMERICA, and BUREAU OF PRISONS, JOHN/JANE DOES 1-10.** <br><br> **Defendants.** | CIVIL ACTION NO. 20-cv-1025 <br><br> Motion Returnable: February 20, 2024 <br><br> **PLAINTIFF, JOSHUA ROY MOSES' COUNTERSTATEMENT OF MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Joshua Moses ("Plaintiff"), by undersigned counsel, respectfully submits the following Counterstatement of Facts ("Pl.'s CSMF"). This response is designed to identify the factual grounds for Defendant's motion are disputed, thereby requiring Defendant's Partial Motion for Summary Judgment be denied:

**Plaintiff's Counterstatement of Facts**

1. Plaintiff, Joshua Ray Moses ("Mr. Moses") is currently an inmate at the State Correctional Institute Phoenix in Collegeville, Pennsylvania. (Declaration of Joshua Roy Moses, dated February 2, 2024 at ¶ 1; A true and correct copy of Mr. Moses' Declaration is attached as Exhibit 1 to the Certification of Saranne E. Weimer, Esq. ("Weimer Cert") and will be referred to as "Exh. 1 at ¶ [paragraph]").

2. In 2009, Mr. Moses was shot multiple times in his torso and suffered serious injuries to his lungs, liver, kidney, abdomen, and buttocks for which he had several surgeries. The

injuries to his abdomen were so severe that he remained hospitalized and received tube feedings for over a year. (Exh. 1 at ¶ 2).

3. During this period, Mr. Moses developed short bowel syndrome and three fistulas, requiring the removal of significant portions of his small intestine and colon. This left him with approximately one-third of his small intestine. (Exh. 1 at ¶ 3). Despite these issues, Mr. Moses was generally able to manage the condition without issue before he was taken into custody. (Second Amended Complaint, Exh. A to Def.'s SMF, ECF No. 117-4, at ¶ 38).

4. In May of 2014, Mr. Moses was incarcerated at the Federal Detention Center in Philadelphia, Pennsylvania and later transferred to the Federal Detention Center in Cumberland, Maryland ("Cumberland"). In May 2017, while at Cumberland, Mr. Moses had surgery to correct an open abdominal wound that was leaking and bleeding. That surgery left him with strands of nylon suture protruding directly out of his abdomen for months. (Exh. 1 at ¶ 4).

5. Mr. Moses was later transferred to the Federal Detention Center at Fort Dix, New Jersey ("Fort Dix") in June of 2017. At that time, he began to experience severe abdominal pain, diarrhea, vomiting, significant weight loss and an inability to digest food. While at Fort Dix, he was under the care of Dr. Ravi Sood. (Exh. 1 at ¶ 5).

6. In February 2018, Mr. Moses was rushed to the emergency room at the Robert Wood Johnson Hospital ("RWJ") with extreme abdominal pain. It was determined then that he was suffering from a bowel obstruction. While at RWJ, Mr. Moses was evaluated by Dr. Louis Fares, a surgeon. Dr. Fares recommended that Mr. Moses undergo upper and lower endoscopies to determine the cause of his bowel obstruction as well as the extreme abdominal pain he was experiencing. (Exh. 1 at ¶ 6).

7. The prison took no action on Dr. Fares' recommended endoscopies, and Mr. Moses continued to suffer from extreme abdominal pain, vomiting and diarrhea. (Exh. 1 at ¶ 7).

8. On April 11, 2018, Mr. Moses could no longer endure his severe abdominal pain and he was again rushed to the RWJ Hospital where his physicians found yet another bowel obstruction. (Exh. 1 at ¶ 8).

9. By this time, the prison had still had not ordered the endoscopies Dr. Fares recommended back in February of 2018. (Exh. 1 at ¶ 9).

### I.   Mr. Moses' April 24, 2018 Visit With Dr. Chowdhury

10. After Mr. Moses left RWJ, the prison finally arranged for him to see Dr. Banwarlal Chowdhury. (Exh. 1 at ¶ 10; Deposition of Banwarlal Chowdhury, June 6, 2023 and July 27, 2023, at p. 8:7 – 9:5; A true and correct copy of Dr. Chowdhury's deposition transcript is attached to the Weimer Cert. as Exhibit 2 and will be referenced to as "Exh. 2 at [page:line-line]").

11. Dr. Chowdhury is a licensed physician and a gastrointestinal specialist who serves as a consultant to the Federal Bureau of Prisons ("BOP"). Dr. Chowdhury has the ability to prescribe a range of medications, including those to treat pain. (Exh. 2 at pp. 8:7 – 9:5; 52:22 – 25).

12. The BOP has never placed any limitations on Dr. Chowdhury's ability to prescribe or recommend opiate or non-opiate pain medications for his inmate patients. This was left to his own medical judgment. (Exh. 2 at p. 55:3 – 7; 65:23 – 66:6).

13. Dr. Chowdhury agrees that an important part of treating patients is the physician's review of their medical records to gain knowledge about their past ailments and hospitalizations. (Exh. 2 at p. 38:6 – 40:9).

14. If Dr. Chowdhury needed the medical records for one of his inmate patients, the BOP would make them available to him. (Exh. 2. at p. 38:6 – 39:8).

15. When Mr. Moses met with Dr. Chowdhury on April 24, 2018, he told Dr. Chowdhury that he was experiencing severe abdominal pain, vomiting and diarrhea, just as he had suffered in the RWJ emergency room in February and again a mere two weeks before their visit. Dr. Chowdhury then performed a brief physical exam on Mr. Moses and asked him questions about his medical history. (Exh. 1 at ¶ 11).

16. Despite Mr. Moses' extensive past medical history, Dr. Chowdhury has no recollection of ever requesting or reviewing any of Mr. Moses' medical records at any time, not even his own notes about treating Mr. Moses. (Exh. 1 at ¶ 13; Exh. 2 at p. 133:19 – 134:25; 138:4 – 140:14; 151:14 – 19). As such, Dr. Chowdhury claimed to have no knowledge about the recommendations for the endoscopies by Dr. Fares. (Exh. 2. at pp. 87:11-22; 111:21-113:13). Further, Dr. Chowdhury failed to order the endoscopies based on his own assessment of Mr. Moses, even though he admitted at deposition that he had no disagreement with the need for endoscopies. (Exh. 2 at pp. 111:21-113:13; 72:11 – 75:14; 77:23 – 78:11; 96:16 – 97:10; 127:18 – 129: 16; 132:3 – 10; 138:4 – 24; 171:12 – 173:5; Dr. Eisner's Report at pp. 3-4).

17. Regarding his physical exam, Dr. Chowdhury took Mr. Moses' vitals (blood pressure, pulse, breathing). He then pressed on Mr. Moses' abdomen which increased his pain considerably. (Exh. 1 at ¶ 12).

18. When Dr. Choudhury asked Mr. Moses about his medical history, he gave him a detailed description that included the information in CSMF ¶¶ 2-8 above. (Exh. 1 at ¶ 13).

19. During this discussion and throughout the time he treated Mr. Moses, Dr. Chowdhury never asked Mr. Moses whether he had ever suffered from addiction to any legal or

illegal substances. In fact, Dr. Chowdhury never viewed Mr. Moses as a "drug seeker" of any nature, yet he still took no steps to address his severe pain. (Exh. 1 at ¶ 14; Exh. 2 at p. 66:11 – 67:1; Expert Report of Dr. Todd Eisner ("Dr. Eisner's Report"), Exh. B to Def.'s SMF, ECF No. 117-5, at p. 4).

20. At the conclusion of their meeting, Dr. Chowdhury told Mr. Moses that he was suffering from two medical conditions known as "adhesions" and "short gut" or "bowel" syndrome. Dr. Chowdhury also told Mr. Moses that each condition could cause severe abdominal pain. Dr. Chowdhury prescribed three medications for Mr. Moses to take, Bentyl, Omeprazole ("Prilosec") and Imodium. (Exh. 1 at ¶ 15; Exh. 2 at 100:18 – 103:25; 133:19 – 25).

21. "Adhesions" is a chronic, severely painful condition most often caused by prior surgery, where scars form and wrap around and press on the patient's organs and nerves. Adhesions can also cause life-threatening bowel obstructions and perforations in the GI track. (Exh. 2 at p. 129:1 – 13; 51:1 – 25; 180:8 – 181:24; Dr. Eisner's Report at p. 2).

22. "Adhesions" can only be definitely diagnosed through exploratory surgery. (Exh. 2 at p. 131:22 – 25; Dr. Eisner's Report at p. 2).

23. The only treatment for "adhesions" is a procedure known as "Lysis of adhesions," where the patient's internal abdominal scarring is burned away in the hope of lessening their chronic pain. (Exh. 2 at p. 70:2l; 131:22 – 25; Dr. Eisner's Report at p. 2).

24. Dr. Chowdhury agrees that while adhesions cannot be detected by diagnostic tests like endoscopies, CT scans, MRIs, ultrasounds, or X-rays, these tests should be exhausted before diagnosing adhesions because they may be of "super assistance" in ruling out other, even life-threatening, conditions causing the pain such as stomach tumors, bowel obstructions and fistulas.

(Exh. 2 at p. 68:1 – 70:25; 72:1 – 25:19; 77:23 – 78:11; 171:12 – 173:5; Dr. Eisner's Report at p. 3).

25. Short-bowel syndrome and bowel obstructions can also be extremely painful and life-threatening. (Exh. 2 at p. 171:12 – 173:5).

26. Indeed, Dr. Chowdhury agrees that if one of his private patients presented with suspected adhesions or short bowel syndrome like Mr. Moses, he would have ordered the available tests to rule out any other conditions that may be causing their pain. (Exh. 2 at p. 97:7 – 98:17).

27. The BOP placed no limitations on the diagnostic tests Dr. Chowdhury could order or recommend for inmate patients like Mr. Moses. (Exh. 2 at p. 42:19 – 46:13).

28. Dr. Chowdhury never ordered or recommended a single, follow-up test (endoscopies, CT scans, MRIs, X-rays, or ultrasounds) for Mr. Moses at any time. (Exh. 2 at p. 72:11 – 75:14; 77:23 – 78:11; 96:16 – 97:10; 127:18 – 129:16; 132:3 – 10; 138:4 – 24; 171:12 – 173:5; Dr. Eisner's Report at pp. 3-4).

29. Dr. Chowdhury never ordered or recommended exploratory surgery to definitively diagnose Mr. Moses' adhesions to move toward a treatment plan like the "Lysis" procedure to ease his abdominal pain. (Exh. 1 at ¶ 34; Exh. 2 at p. 70:21 – 71:22; 131:22 – 25; 165:20 – 166:1; Dr. Eisner's Report at pp. 3-2, 6).

30. None of the three medications Dr. Chowdhury gave Mr. Moses after the April 24, 2018 visit (Bentyl, Omeprazole, and Imodium) had any direct pain-relieving qualities. (Exh. 1 at ¶ 16; Exh. 2 at p. 100:18 – 102:8; 102:13 – 23; 103:5 – 25; 133:19 – 134:4; Dr. Eisner's Report at pp. 3-6).

31. Despite Mr. Moses' two recent bowel obstructions and the extreme pain he reported to him, Dr. Chowdhury did not advise Mr. Moses that he should be sent to any hospital emergency

room. (Exh. 1 at ¶ 17).  If a private patient had presented to him with these concerns, he would have told them to go to the emergency room. (Exh. 2. at pp, 53:14-23; 56:5-13).

32. Dr. Chowdhury did not prescribe Mr. Moses any medication to control his severe abdominal pain like opiate based preparations such as Percocet or Tramadol. (Exh. 1 at ¶ 18; Exh. 2 at p. 52:22 – 53:19; 62:10 – 17; 176:5 – 176:22).

33. Moreover, although he routinely tells his patients that "Tylenol is the best medicine," Dr. Chowdhury did not even prescribe for Mr. Moses any common non-opiate pain relievers such as over-the-counter ("OTC") Tylenol or Advil. (Exh. 1 at ¶ 19; Exh. 2 at p. 61:9 – 24; Dr. Eisner's Report at p. 4).

34. While Dr. Chowdhury diagnosed Mr. Moses with painful "adhesions" and "short bowel syndrome" he never ordered or recommended a *single* follow-up test to determine the cause of his chronic abdominal pain or bowel blockages such as endoscopies, MRIs, CT scans, ultrasounds, X-rays, or exploratory surgery. In fact, Dr. Chowdhury has no recollection of ever ordering or recommending such tests at any time during his treatment of Mr. Moses from April 24, 2018 through October 31, 2019. (Exh. 1 at ¶ 21; Exh. 2 at p. 70:21 – 71:22; 97:2 – 10; 127: 9 – 128:11; 131:15 – 132:10; 138:9 – 25; 165:20 – 166:1).

35. Had Mr. Moses been one of Dr. Chowdhury's private, non-inmate patients, he would have ordered the tests.  (Exh. 2 at p. 96:16 – 97:10; 127:14 – 129:16; 130:25 – 132:10).

36. Instead, Dr. Chowdhury's only advice to Mr. Moses was "[s]tay away from surgeons and maybe you'll live longer." (Exh. 1 at ¶ 22; Exh. 2 at p. 110:5 – 15).

37. Although the BOP imposed no restrictions on his ability to do so, at no time did Dr. Chowdhury ever refer Mr. Moses to any pain-management specialist.  (Exh. 1 at ¶ 20; Exh. 2 at p. 55:3 – 56:4).

## II.     Mr. Moses' November 30, 2018 Visit With Dr. Chowdhury

38.     In June 2018, Dr. Fares recommended, for a second time, that Mr. Moses undergo upper and lower endoscopies to rule out certain conditions that may be causing his severe abdominal pain. (Exh. 1 at ¶ 23).

39.     However, the prison again failed to order those or any other tests. (Exh. 1 at ¶ 24).

40.     Dr. Chowdhury did not follow up with Mr. Moses, his care or the efficacy of the Bentyl, Omeprazole, or Imodium he prescribed him at any time after their April 24, 2018 visit. (Exh. 2 at p. 133:19 – 134:5; 148:9 – 15: 150:1 – 5).

41.     Between June and November 2018, Mr. Moses continued to suffer from chronic, severe abdominal pain. (Exh. 1 at ¶ 25).

42.     In late November of 2018, the prison finally sent Mr. Moses for the endoscopies that Dr. Fares had been recommending for over nine months. (Exh. 1 at ¶ 26; Exh. 2 p. 150:1-19).

43.     Dr. Chowdhury performed these upper and lower endoscopies on November 30, 2018. (Exh. 1 at ¶ 27; Exh. 2 at p. 150:25 – 151:3; 162:12 – 24).

44.     Prior to the operation, Mr. Moses met with Dr. Chowdhury to discuss his present condition and the procedures. During this meeting, Mr. Moses told Dr. Chowdhury that his "chief complaint" was that he continued to suffer from severe abdominal pain, vomiting and diarrhea almost daily since he last saw him on April 24, 2018. (Exh. 1 at ¶ 28; Exh. 2 at p. 153:18 – 154:20).

45.     After performing the endoscopies, Dr. Chowdhury told Mr. Moses the results were "normal" and that he should have them repeated "in ten years." (Exh. 1 at ¶ 29).

46. While fully aware of Mr. Moses' extreme abdominal pain and history of bowel obstructions, Dr. Chowdhury failed to take any steps to address his ongoing severe pain and failed to prescribe him any opiate or non-opiate pain-relieving medications, not even OTC Tylenol or Advil, in connection with the November 30, 2018 endoscopies. (Exh. 1 at ¶ 30; Dr. Eisner's Report at pp. 4-5).

47. Similarly, despite his extreme abdominal pain, Dr. Chowdhury never referred Mr. Moses to any pain-management specialist or hospital emergency room before or after the endoscopies. (Exh. 1 at ¶ 31; Exh. 2 at p. 55:3 – 56:4; Dr. Eisner's Report at p. 2).

48. Dr. Chowdhury claims that after the endoscopy results in November 2018 ruled out colon cancer, polyps and colitis as sources of Mr. Moses' severe abdominal pain, he recalls no further follow-up with regard to exploratory surgery to reach a definitive diagnosis or further treatment of the suspected adhesions. In essence, he washed his hands of Mr. Moses' care stating: "[m]y procedures were normal. Patient was sent back to prison system. That was the end of it." (Exh. 2 at 165:6 – 166:5).

### III. Mr. Moses' August 21, 2019 Visit With Dr. Chowdhury

49. Mr. Moses was again sent to see Dr. Chowdhury almost a year later on August 21, 2019. During this meeting, Mr. Moses told Dr. Chowdhury that he had been suffering from frequent severe abdominal pain, vomiting and diarrhea since he last saw him in November 2018. (Exh. 1 at ¶ 32; Exh. 2 at p. 174:3 – 175:24). Overall, it had now been sixteen months of Mr. Moses reporting frequent severe abdominal pain suffered on an almost daily basis. (Exh. 1 at ¶ 32).

50. During their August 21, 2019 visit, Dr. Chowdhury performed a physical examination on Mr. Moses, asked him a few questions, and then told him that he had constipation,

diarrhea and "short bowel syndrome." Dr. Chowdhury again gave Mr. Moses no advice regarding his chronic abdominal pain, and did not even mention his own April 2018 diagnosis that Mr. Moses was also suffering from abdominal "adhesions." Indeed, Dr. Chowdhury never gave Mr. Moses any instruction about definitively confirming that diagnosis or any treatment plan for Mr. Moses' "adhesions." As noted, a conclusive diagnosis of "adhesions" can only be reached through exploratory surgery and treated through a process known as "Lysis of Adhesions" in which a surgeon burns away the abdominal scars causing the "adhesions." In failing to give Mr. Moses any information concerning this medical option, Dr. Chowdhury displayed blatant disregard for Mr. Moses' condition and again denied his patient the right to make an informed decision concerning the procedure. (Exh. 1 at ¶ 33; Exh. 2 at p. 51:13- 52:12; 70:11 – 71:22; 174:8 – 175:24; Dr. Eisner's Report at pp. 2-6).

51. Like before, Dr. Chowdhury also failed to prescribe any pain-relieving medications for Mr. Moses, whether opiate based or even OTC preparations like Tylenol or Advil. Instead, Dr. Chowdhury simply told Mr. Moses to take Colace (a stool softener), fiber and the same Bentyl that had no pain-relieving qualities. (Exh. 1 at ¶ 34; Exh. 2 at p. 176:4 – 22; Dr. Eisner' Report at p. 5).

52. Despite the severe pain he reported, Dr. Chowdhury also did not refer Mr. Moses to any pain-management specialist in connection with their August 21, 2019 visit. (Exh. 1 at ¶ 35; Exh. 2 at p. 55:3 – 56:4).

53. Dr. Chowdhury likewise failed to send Mr. Moses to any hospital emergency room in connection with their August 21, 2019 visit. (Exh. 1 at ¶ 31).

### IV.     Mr. Moses' October 31, 2019 Visit with Dr. Chowdhury

54. Mr. Moses' severe abdominal pain continued, without relief, through October 31, 2019 when he next saw Dr. Chowdhury. (Exh. 1 at ¶ 37; Exh. 2 at p. 179:18 – 180:11).

55. At that meeting, Dr. Chowdhury again performed a physical examination and asked Mr. Moses a few questions about his present condition. Mr. Moses' told Dr. Chowdhury that since their last visit in August 2019, he was still experiencing the same severe abdominal pain, vomiting and diarrhea. This was the same level of severe pain that Mr. Moses had been suffering, continuously, since first seeing Dr. Chowdhury over eighteen months earlier in April 2018. (Exh. 1 at ¶ 38; Exh. 2 at p. 179:18 – 181:24).

56. Dr. Chowdhury again diagnosed Mr. Moses as suffering from the painful conditions "short bowel syndrome" and "adhesions." (Exh. 1 at ¶ 39; Exh. 2 at p. 51:1 – 25; 180:8 – 181:24).

57. Even in the face of Mr. Moses' pain and his own diagnosis that he truly suffered from "adhesions" and "short bowel syndrome," which Dr. Chowdhury admits cause severe pain, Dr. Chowdhury again failed to prescribe for Mr. Moses any opiate-based or non-opiate based pain medications – not even OTC Tylenol or Advil – to ease his severe abdominal distress. When asked why he refused to treat Mr. Moses' pain in October 2019, Dr. Chowdhury replied "I do not know." (Exh. 1 at ¶ 39; Exh. 2 at p. 179:18 – 182:3).

58. Instead of treating his severe pain, Dr. Chowdhury told Mr. Moses to simply take "multivitamins" and drink "Ensure," a nutrition shake. Of course, Dr. Chowdhury agrees that neither of these supermarket supplements could do anything to ease Mr. Moses' chronic abdominal pain. (Exh. 1 at ¶ 40; Exh. 2 at p. 179:18 – 180:20; 182:16 – 18:1; *see also* Dr. Eisner's Report at p. 6).

59. According to Dr. Eisner, "[a]t this point in Mr. Moses' treatment history, Dr. Chowdhury should have, at the very minimum, referred him to a qualified pain specialist for evaluation and treatment." (Dr. Eisner's Report at p. 6.)

60. Dr. Chowdhury did not refer Mr. Moses to any pain-management specialist in connection with their final October 31, 2019 visit. (Exh. 1 at ¶ 42; Exh. 2 at p. 55:3 – 56:4).

61. Dr. Chowdhury did not send Mr. Moses to any hospital emergency room in connection with their final October 31, 2019 visit. (Exh. 1 at ¶ 41).

62. Dr. Chowdhury's indifference to Mr. Moses' medical needs caused him to "suffer[] years of chronic untreated abdominal pain, and the suffering associated with such pain." (Dr. Eisner's Report at p. 8).

                                                  Respectfully submitted,
                                                  REED SMITH, LLP

                                                  *s/Saranne E. Weimer*
                                                  Don A. Innamorato, Esq.
                                                  Saranne E. Weimer, Esq.
                                                  Wendy D. Choi, Esq.
                                                  506 Carnegie Center, Suite 300
                                                  Princeton, New Jersey 08543
                                                  Phone: (609) 987-0050
                                                  Facsimile: (609) 951-0824
                                                  *Pro Bono Attorneys for Plaintiff*

Dated:  February 6, 2024