**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSHUA MOSES,<br><br>              Plaintiff,<br><br>    v.<br><br>RAVI SOOD, et al.,<br><br>              Defendants. | Civil Action No. 20-1025 (KMW) (MJS)<br><br>**OPINION** |

**WILLIAMS**, District Judge:

This matter comes before the Court on Defendant Chowdhury's motion for summary judgment. (ECF No. 117.) Plaintiff filed a response to the motion (ECF Nos. 134-35), to which Defendant replied. (ECF No. 136.) For the following reasons Defendants motion for summary judgment shall be granted.

**I.    BACKGROUND**

Following a shooting in 2009, Plaintiff underwent a number of surgeries which left him with "short bowel syndrome" after two-thirds of his small intestine had to be removed. (ECF No. 135-3 at 2.) Plaintiff underwent subsequent surgeries while incarcerated. (*Id.* at 3.) In June 2017, Plaintiff was transferred to FCI Fort Dix, where he continued to have issues with abdominal pain, diarrhea, vomiting, and weight loss. (*Id.*) This culminated in Plaintiff being taken to the emergency room for abdominal pain in 2018, and Plaintiff being diagnosed with a bowel obstruction, with a recommendation that endoscopies be conducted to find the cause of the

obstruction. (*Id.*) Plaintiff's issues continued and no endoscopy was conducted, and in April 2018, Plaintiff again returned to the emergency room and was treated for another bowel obstruction. (*Id.*)

Later in April 2018, Plaintiff was seen by Defendant Chowdhury, a Gastroenterologist who worked out of St. Francis Hospital and served as a contractor for Fort Dix providing GI consultations. (*Id.* at 4; ECF No. 117-4 at 2.) During that initial visit, Plaintiff initially reported symptoms including abdominal pain, diarrhea, gas, and GERD. (ECF No. 135-4 at 22.) During this meeting, the doctor took a patient history from Plaintiff, and conducted a manual physical examination of Plaintiff's abdominal region which indicated no palpable masses. (*Id.* at 22-24; ECF No. 135-3 at 4.) Although an emergency room doctor had previously recommended an endoscopy, Defendant testified that he had not been made aware of that recommendation at the time of treatment. (ECF No. 135-4 at 23.) Based on his evaluation, Defendant diagnosed Plaintiff with likely having adhesions and alongside short bowel syndrome. (*Id.* at 25.) Defendant prescribed Plaintiff a number of medications, including Bentyl, a gut antispasmodic medication that could also reduce abdominal pain caused by spasms; Omeprazole, an acid reducer; and Imodium, but did not recall recommending an endoscopy during that first visit. (*Id.* at 25-28.) Defendant did not prescribe any specific pain medication. (*Id.*) Defendant testified, however, that in most cases, his course of treatment is generally to try mediation first, and then to move onto endoscopies or other interventions if symptoms do not resolve. (*Id.* at 28.) Defendant testified that endoscopy or colonoscopy for one with Plaintiff's history also brought risk of complications including bowel perforations, which further cautioned against performing such procedures until necessary. (*Id.* at 29.) Plaintiff avers that the doctor advised him to "stay away from surgeons" and he may "live longer." (ECF No. 135-3 at 4-5.)

Although Plaintiff remained under the care of several other prison doctors, his symptoms did not improve with the medication and he continued to suffer from chronic pain. (ECF No. 135-3 at 5.) Plaintiff did not see Defendant again until November 2018. (*Id.*) At that time, the doctor performed both a lower and upper endoscopy on Plaintiff. (ECF No. 135-4 at 48.) The endoscopies returned normal results, ruling out conditions such as cancer, colon polyps, or peptic ulcers, which led Defendant to a conclusion that supported the diagnosis of adhesions. (*Id.* at 52.) Although Plaintiff avers he reported continued abdominal pain, Defendant did not prescribe pain medication following the procedure. (ECF No. 135-3 at 5.)

Plaintiff's continued abdominal issues resulted in his being sent to see Defendant again in August 2019. (*Id.* at 6.) At that visit, Plaintiff again reported chronic diarrhea, on and off abdominal pain, vomiting, and weight loss. (ECF No. 135-4 at 54.) Defendant examined Plaintiff, found no palpable masses, and ultimately prescribed Plaintiff with Colace, fiber, and bentyl to aid with cramping and constipation issues. (*Id.*) Defendant did not prescribe pain medication, as Defendant's "impression [was] that [Plaintiff] needs Bentyl" to relieve spasms and resulting discomfort, and not opioid pain medication, which has the propensity to cause addiction issues and other complications. (*Id.* at 54-55, 59.) Indeed, Defendant reported that he generally did not prescribe opiate pain medication in his practice when it could be avoided, especially as it could make GI symptoms, such as the constipation Plaintiff reported, worse. (*Id.* at 59.)

Plaintiff's issues persisted, and he saw Defendant for a final time in October 2019. (*Id.* at 55.) Upon conducting a physical examination of Plaintiff, Defendant recommended that Plaintiff be provided with Ensure and multivitamins, and be moved onto a low lactose diet. (*Id.*) Defendant did not prescribe pain medication, but also did not recall Plaintiff requesting any such medicine or describing severe pain at this visit, and his notes did not mention reports of pain from Plaintiff whereas prior visit notes had mentioned intermittent pain. (*Id.* at 56.)

3

In support of his medical claims, Plaintiff has provided a report from a Dr. Todd Eisner, a licensed physician who practices gastroenterology. (ECF No. 117-5 at 42.) In his report, Dr. Eisner opines that Defendant "breached the standard of medical care" expected of a GI specialist when, following Plaintiff's first consultation, Defendant failed to order follow up tests such as endoscopies, CT scans, MRIs, or X-rays, to rule out various potential issues which may have been the source of Plaintiff's pain. (*Id.* at 44.) Dr. Eisner further opines that Defendant "did not meet the standard of medical care expected of GI specialists" when he declined to prescribe Plaintiff with pain medication during his course of treatment. (*Id.*) Dr. Eisner also opines that Defendant's failure to order further testing or refer Plaintiff for pain management when his endoscopies show no issues in November 2018 "fell below the standard of care" expected of a GI specialist. (*Id.* at 44-45.) Dr. Eisner repeats these same opinions as to the 2019 visits – essentially suggesting that the proper standard of care would have required further testing and some kind of pain management referral. (*Id.* at 45-47.)

## II.  LEGAL STANDARD

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment a district court must "view

4

the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *id.*, but must not make credibility determinations or engage in any weighing of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014).

> "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine issue as to a material fact for trial."

*Serodio*, 27 F. Supp. 3d at 550.

### III.   DISCUSSION

Defendant argues in his motion that he is entitled to summary judgment as to Plaintiff's deliberate indifference to medical needs claim, which arises under the Eighth Amendment as Plaintiff was a convicted federal prisoner during his course of treatment.[1] To establish liability for such a claim, a plaintiff must show that the defendants were deliberately indifferent to his medical needs. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). This requires

---

[1] Defendant does not move for judgment as to Plaintiff's claim against Defendant for medical malpractice.

both that the plaintiff show that he had a sufficiently serious medical need, and that the defendant engaged in actions or omissions which indicate that he knew of and disregarded "an excessive risk to inmate health or safety." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). A medical need is sufficiently serious where it "has been diagnosed as requiring treatment or [is a need that] is so obvious that a lay person would easily recognize the necessity of a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert denied*, 486 U.S. 1006 (1988). "'Where a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Everett v. Nort*, 547 F. App'x 117, 121 (3d Cir. 2013) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979)). In such cases, a plaintiff may generally not show deliberate indifference by merely expressing his disagreement or dissatisfaction with the defendant's course of action. *See Hairston v. Director Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. 2014); *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990); *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Likewise, because a claim under the Eighth Amendment requires that a defendant be deliberately indifferent, a species of recklessness, a claim asserting medical negligence alone is insufficient to support a claim for relief. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

As Defendant readily admits that Plaintiff had a sufficiently serious medical need, Defendant's motion rises and falls with its assertion that Plaintiff has failed to provide facts which sufficiently indicate deliberate indifference. In this matter, Plaintiff's medical claims against Defendant Chowdhury rest on two general propositions – that the doctor should have conducted further diagnostic tests to better diagnose Plaintiff's abdominal issues, and that Defendant should have either prescribed pain medication or referred Plaintiff for pain management. Initially, this

6

Court notes that this is not a case in which Plaintiff went without treatment – the record indicates that he was under constant treatment not only by Defendant but a number of other doctors, including prison doctors, ER doctors, and others, and this Court must therefore not unnecessarily second guess Defendant's medical decisions or infer constitutional liability where the plaintiff has presented evidence of only medical malpractice. *Everett*, 547 F. App'x at 121. Plaintiff may and does disagree with the course of treatment undertaken by Defendant, but that alone is insufficient to show deliberate indifference. *White*, 897 F.2d at 110.

Having reviewed the record of this matter, and the report of Plaintiff's expert, it appears that Plaintiff has presented evidence which could support a claim for medical malpractice – i.e. that Defendant's choice not to initially conduct an endoscopy and not to provide pain medication fell below the applicable standard of care for a physician in his field. That, however, does not amount to deliberate indifference – Defendant has provided testimony explaining the reason for the choices he made – that his practice was to seek to resolve issues with medication before turning to potentially harmful diagnostic tests, that he conducted an endoscopy when he saw Plaintiff for a second time and issues had not resolved, that the medication provided was intended to relieve spasms which could have been a source of pain without the need for opiates which could complicate or worsen some of Plaintiff's issues and hide dangerous problems by covering up rather than treating them, and that surgery was risky given Plaintiff's history and previous loss of intestines. Likewise, the Court also must place the doctor's actions in context – he was not Plaintiff's regular physician, but rather a consultant seen on four occasions over two years, that Plaintiff was treated between those visits, and Dr. Chowdhury was not the only avenue Plaintiff had to request pain medication, including non-opiate pain relievers. Dr. Chowdhury's actions may, as Plaintiff's expert contends, have failed to live up to the appropriate standard of care, but the evidence before the Court does not indicate that the doctor disregarded the risks posed to

Plaintiff's health, and instead indicate that the doctor provided a course of treatment, undertook diagnostic testing when initial medication did not resolve the issue, and modified the provided recommendations as Plaintiff's symptoms changed. These decisions, which were based on Defendant's medical judgment, when considered in the context of Plaintiff's history and the limited number of referrals prison doctors provided for Plaintiff to see Defendant, would not permit a reasonable juror to find that Defendant was deliberately indifferent to Plaintiff's medical needs, and instead suggest, at most, that Defendant may have been medically negligent. Defendant is therefore entitled to summary judgment as to Plaintiff's deliberate indifference claims, and his motion shall be granted.

## IV.  CONCLUSION

In conclusion, Defendants' motion for summary judgment (ECF No. 117) is granted. An appropriate order follows.

Hon. Karen M. Williams,
United States District Judge