**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSHUA MOSES, <br><br> Plaintiff, <br><br> v. <br><br> RAVI SOOD, et al., <br><br> Defendants. | Civil Action No. 20-1025 (KMW) (MJS) <br><br> **MEMORANDUM ORDER** |

This matter comes before the Court on Defendant's second motion for summary judgment. (ECF No. 163.) Plaintiff opposed that motion (ECF No. 171), and Defendant filed a reply. (ECF No. 172.) For the following reasons, Defendant's motion is denied.

This Court previously summarized the factual background of this matter as follows:

> Following a shooting in 2009, Plaintiff underwent a number of surgeries which left him with "short bowel syndrome" after two-thirds of his small intestine had to be removed. (ECF No. 135-3 at 2.) Plaintiff underwent subsequent surgeries while incarcerated. (*Id.* at 3.) In June 2017, Plaintiff was transferred to FCI Fort Dix, where he continued to have issues with abdominal pain, diarrhea, vomiting, and weight loss. (*Id.*) This culminated in Plaintiff being taken to the emergency room for abdominal pain in 2018, and Plaintiff being diagnosed with a bowel obstruction, with a recommendation that endoscopies be conducted to find the cause of the obstruction. (*Id.*) Plaintiff's issues continued and no endoscopy was conducted, and in April 2018, Plaintiff again returned to the emergency room and was treated for another bowel obstruction. (*Id.*)
>
> Later in April 2018, Plaintiff was seen by Defendant Chowdhury, a Gastroenterologist who worked out of St. Francis Hospital and served as a contractor for Fort Dix providing GI consultations. (*Id.* at 4; ECF No. 117-4 at 2.) During that initial visit, Plaintiff initially reported symptoms including abdominal

pain, diarrhea, gas, and GERD. (ECF No. 135-4 at 22.) During this meeting, the doctor took a patient history from Plaintiff, and conducted a manual physical examination of Plaintiff's abdominal region which indicated no palpable masses. (*Id.* at 22-24; ECF No. 135-3 at 4.) Although an emergency room doctor had previously recommended an endoscopy, Defendant testified that he had not been made aware of that recommendation at the time of treatment. (ECF No. 135-4 at 23.) Based on his evaluation, Defendant diagnosed Plaintiff with likely having adhesions and alongside short bowel syndrome. (*Id.* at 25.) Defendant prescribed Plaintiff a number of medications, including Bentyl, a gut antispasmodic medication that could also reduce abdominal pain caused by spasms; Omeprazole, an acid reducer; and Imodium, but did not recall recommending an endoscopy during that first visit. (*Id.* at 25-28.) Defendant did not prescribe any specific pain medication. (*Id.*) Defendant testified, however, that in most cases, his course of treatment is generally to try medication first, and then to move onto endoscopies or other interventions if symptoms do not resolve. (*Id.* at 28.) Defendant testified that endoscopy or colonoscopy for one with Plaintiff's history also brought risk of complications including bowel perforations, which further cautioned against performing such procedures until necessary. (*Id.* at 29.) Plaintiff avers that the doctor advised him to "stay away from surgeons" and he may "live longer." (ECF No. 135-3 at 4-5.)

Although Plaintiff remained under the care of several other prison doctors, his symptoms did not improve with the medication and he continued to suffer from chronic pain. (ECF No. 135-3 at 5.) Plaintiff did not see Defendant again until November 2018. (*Id.*) At that time, the doctor performed both a lower and upper endoscopy on Plaintiff. (ECF No. 135-4 at 48.) The endoscopies returned normal results, ruling out conditions such as cancer, colon polyps, or peptic ulcers, which led Defendant to a conclusion that supported the diagnosis of adhesions. (*Id.* at 52.) Although Plaintiff avers he reported continued abdominal pain, Defendant did not prescribe pain medication following the procedure. (ECF No. 135-3 at 5.)

Plaintiff's continued abdominal issues resulted in his being sent to see Defendant again in August 2019. (*Id.* at 6.) At that visit, Plaintiff again reported chronic diarrhea, on and off abdominal pain, vomiting, and weight loss. (ECF No. 135-4 at 54.) Defendant examined Plaintiff, found no palpable masses, and ultimately prescribed Plaintiff with Colace, fiber, and bentyl to aid with cramping and constipation issues. (*Id.*) Defendant did not prescribe pain medication, as Defendant's "impression [was] that [Plaintiff] needs Bentyl" to relieve spasms and resulting discomfort, and not opioid pain medication, which has the propensity to cause addiction

issues and other complications. (*Id.* at 54-55, 59.) Indeed, Defendant reported that he generally did not prescribe opiate pain medication in his practice when it could be avoided, especially as it could make GI symptoms, such as the constipation Plaintiff reported, worse. (*Id.* at 59.)

Plaintiff's issues persisted, and he saw Defendant for a final time in October 2019. (*Id.* at 55.) Upon conducting a physical examination of Plaintiff, Defendant recommended that Plaintiff be provided with Ensure and multivitamins, and be moved onto a low lactose diet. (*Id.*) Defendant did not prescribe pain medication, but also did not recall Plaintiff requesting any such medicine or describing severe pain at this visit, and his notes did not mention reports of pain from Plaintiff whereas prior visit notes had mentioned intermittent pain. (*Id.* at 56.)

In support of his medical claims, Plaintiff has provided a report from a Dr. Todd Eisner, a licensed physician who practices gastroenterology. (ECF No. 117-5 at 42.) In his report, Dr. Eisner opines that Defendant "breached the standard of medical care" expected of a GI specialist when, following Plaintiff's first consultation, Defendant failed to order follow up tests such as endoscopies, CT scans, MRIs, or X-rays, to rule out various potential issues which may have been the source of Plaintiff's pain. (*Id.* at 44.) Dr. Eisner further opines that Defendant "did not meet the standard of medical care expected of GI specialists" when he declined to prescribe Plaintiff with pain medication during his course of treatment. (*Id.*) Dr. Eisner also opines that Defendant's failure to order further testing or refer Plaintiff for pain management when his endoscopies show no issues in November 2018 "fell below the standard of care" expected of a GI specialist. (*Id.* at 44-45.) Dr. Eisner repeats these same opinions as to the 2019 visits – essentially suggesting that the proper standard of care would have required further testing and some kind of pain management referral. (*Id.* at 45-47.)

(ECF No. 156 at 1-4.)

Following a motion for summary judgment, this Court entered judgment in favor of Defendant on Plaintiff's Eighth Amendment deliberate indifference claims, finding that although Plaintiff had provided evidence of malpractice, Plaintiff had not demonstrated sufficient evidence to permit a reasonable juror to find that Defendant had acted with deliberate indifference in light of the course of treatment Plaintiff had received while in prison. (*Id.* at 6-8.) As Defendant did

not move on Plaintiff's malpractice or negligent infliction of emotional distress claims, this Court did not address them in deciding the first summary judgment motion.[1] (*Id.* at 5 n. 1.) Defendant now moves for summary judgment as to these remaining claims.

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment a district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *id.*, but must not make credibility determinations or engage in any weighing of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l*

---

[1] Because cross claims remain between Defendant and the federal defendants who are no longer direct Defendants in this case, this Court cannot decline supplemental jurisdiction over Plaintiff's remaining claims at this time.

4

*Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014).

> "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine issue as to a material fact for trial."

*Serodio*, 27 F. Supp. 3d at 550.

In his motion, Defendant first argues that he is entitled to summary judgment on Plaintiff's medical malpractice claims because Plaintiff cannot show damages as a result of Defendant's delaying of diagnostic testing. Under New Jersey law, a plaintiff seeking damages for medical malpractice must prove three elements: that "there is an applicable standard of care, . . . a deviation from that standard occurred, and . . . the deviation was the proximate cause of the harm sustained by the plaintiff." *Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353, 367 (D.N.J. 2013). Plaintiff, through his proposed expert, has provided sufficient evidence to permit a jury to find the first two elements – that there was a standard of care, and that Defendant's delay in conducting diagnostic tests and refusal to engage in pain management treatment for Plaintiff through medication deviated from that standard of care.

However, Defendant argues that Plaintiff cannot show proximate cause because Plaintiff's gastrointestinal symptoms and pain remained largely consistent throughout his course of treatment, and the late testing ultimately did not lead to the discovery of any new issues. Essentially, Defendant relies on the lack of a change in symptoms and his own treatment philosophies, to suggest that Plaintiff cannot show that Defendant's actions caused him harm. This argument, however, restricts Plaintiff's claims against Defendant solely to the need for diagnostic testing, it ignores wholesale Plaintiff's contention that Defendant refused to provide him any form of pain medication or pain management throughout the course of treating Plaintiff, a decision Plaintiff's

5

expert has opined caused Plaintiff significant unnecessary suffering and was well beyond the standard of care applicable to GI specialists. Thus, even if Defendant were right that Plaintiff cannot show causation as to Plaintiff's GI symptoms worsening, Plaintiff has provided sufficient facts to create a genuine issue of material fact as to whether Defendant failed to properly treat Plaintiff's pain, resulting in continued suffering over the course of Plaintiff's treatment. As Plaintiff can show a genuine issue of material fact as to at least that aspect of treatment, he has provided sufficient evidence to permit his malpractice claim to go to a jury, and Defendant's motion must be denied as to that claim.

Defendant also moves for summary judgment as to Plaintiff's negligent infliction of emotional distress claim. Under New Jersey law, where a plaintiff raises a claim for negligent infliction of emotional distress in the medical malpractice context, such a claim can be direct – i.e., where the plaintiff was himself the patient, or indirect – i.e., where the patient was a family member of the mistreated patient. *See Kaye v. Nussey*, 670 F. Supp. 3d 149, 157 (D.N.J. 2023). The elements of a direct claim are as follows: the defendant owed the plaintiff a duty of care, the defendant breached that duty, the plaintiff suffered severe emotional distress, and the breach proximately caused that distress. *Johnson v. City of Hoboken*, 476 N.J. Super. 361, 375-76 (App. Div. 2023). Plaintiff's expert's opinion clearly suggests that Defendant owed him a duty of care, and breached that duty. Plaintiff himself testified that he suffered considerable pain and anguish as a result of his untreated pain and the significant delay in diagnostic testing, testimony supported by his expert's opinion. Were a jury to credit their testimony, Plaintiff could establish a claim for relief, and there is therefore a genuine issue of material fact that must be decided by a jury as to Plaintiff's negligent infliction of emotional distress claim. Because genuine issues of fact remain as to both of Plaintiff's remaining state law claims, Defendant's second summary judgment motion must be denied.

IT IS THEREFORE on this 30th ___ day of December, 2024,

ORDERED that Defendants' second motion seeking summary judgment (ECF No. 163) is DENIED; and it is finally

ORDERED that the Clerk of the Court shall serve a copy of this Order upon the parties electronically.

                                                                Hon. Karen M. Williams,
                                                                United States District Judge